## Farrell et al. v. Livingston Apartments, Inc., et al.

*D. L. LaBarre* and *T. E. Weaver*, for plaintiffs.

*Tallman & Walker* and *Butz, Steckel, Hudders & Rupp*, for defendants.

HENNINGER, P. J., October 15, 1951.—Plaintiffs, suing for themselves and all other bondholders, are the holders of $12,000 in face value of bonds which matured on November 1, 1949, and which were part of a $194,000 issue secured by mortgage on defendant, Livingston Apartments' apartment house of which bond issue defendant, Allentown National Bank, is the trustee.

According to the bill of complaint, $4,000 in bonds have been paid off, $168,000 have by agreement of the holders had their maturity date extended by 20 years in consideration of increase in the guaranteed interest rate from four to four and one-half percent and $22,000 in bonds, of which plainitffs hold $12,000 are overdue, unpaid and in default.

Plaintiffs have called upon the trustee to proceed to the enforcement of their rights under the mortgage and have offered to indemnify the trustee in case such action is taken. The trustee replied that the offer of indemnity was unsatisfactory, that foreclosure was inimical to the interests of the assenting bondholders, that plaintiffs did not constitute 25 percent of the bondholders, whose demand made action mandatory in case of default and that the trustee was unwilling to pursue its discretionary power of foreclosure in plaintiffs' interest.

Plaintiffs ask this court to compel the mortgagor to pay their bonds and to order sale of the premises if mortgagors fail to pay, averring that the consent of asseting bondholders was obtained by false threats of bankruptcy, that counsel for the trustee is counsel for the mortgagor's stockholders and for the mortgagor, that the trustee is acting for those bondholders who are stockholders in their interest as stockholders and that the trustee permitted funds available for interest above the minimum rate of four percent to be used to retire $4,000 in bonds.

Defendants filed preliminary objections, objecting: (1) To failure to join all parties in interest or to name those for whom the action is brought; (2) adequate remedy at law; (3) no averment when plaintiffs acquired their bonds; (4) matter impertinent, irrelevant and scandalous; (5) no cause of action stated.

Before considering the objections seriatim, it is at once apparent that the action arises out of the stubborn refusal of defendant mortgagor to meet its just obligations and to recognize the tactical advantage gained by plaintiffs in their insistence upon payment of their bonds according to their terms. This in turn places the trustee in the unenviable position of holding a trust which is perpetually in default and for certain of whose cestuis que trustent it is taking no remedial action. Certainly a defaulting mortgagor should not embarrass its trustee by asking it to continue a defaulted mortgage. It also places the holders of the defaulted bonds in a position where they can continue to collect six percent interest from November 1, 1949, until their bonds are paid.

We see no merit in the first class of preliminary objections. Plaintiffs say that they are acting for all bondholders and under Equity Rule 16 they have the right to do so, since the group would be too numerous to add individually. Whether they are so acting is a

question of fact. Defendants say that the bill on its face shows that they do not, since $168,000 in bonds have agreed to an extension. That is plausible, but it does not necessarily follow from an extension, especially if granted upon threats of bankruptcy, that the assenting bondholders would not nevertheless welcome an earlier return of their money. Since the bonds are registered, defendants have better means of identifying the bondholders than plantiiffs.

Certainly plaintiffs have no adequate remedy at law, for while they could harass the mortgagor by getting judgment against it, destroying its credit and perhaps forcing bankruptcy or attaching assets not covered by the mortgage lien, the remedy is by no means adequate to a secured creditor who is denied the value of his security. Furthermore, trusts are subject to equity jurisdiction, regardless of any remedy at law: Act of June 16, 1836, P. L. 784, 17 PS §281; Keystone Coal Company's Trustee, 225 Pa. 243; Baumer v. Johnstown Trust Co., 345 Pa. 51.

We see no virtue in the objection that plaintiffs have not averred the date of acquisition of their bonds and defendants have not suggested in what way such date would be of importance. This is not a trafficking in deficiency judgments. Here either these plaintiffs or their predecessors had the solemn obligation of the mortgagor, the bond is overdue and the obligation has been dishonored and plaintiffs are seeking recovery out of the pledged security and not out of other assets. The holder at the time of default had a claim against mortgagor which he had the right to assign as he would. It is immaterial to defendants whether they must meet plaintiffs or some mythical predecessor in title to plaintiffs' bonds.

The objections that have given us pause relate to the serious charges that a trustee and its counsel are using

a solemn fiduciary responsibility to protect the interests of the mortgagor at the expense of a bondholder against whom the mortgagor has defaulted. This is complicated by the fact that most bondholders are also stockholders, a situation that does not apply, however, to plaintiffs. While it may be to the interest of assenting bondholders as such that no issue be forced at this time, the trustee has no right to consider their stock interests in framing its discretion, as its reply to plaintiffs would indicate.

We are required, however, at this stage of the pleadings, to treat these allegations as true (Shaffer et al. v. Shaffer et al., 354 Pa. 517, 521), and any doubt on our own part of the possibility of the trustee or its attorneys representing stockholders, with interests conflicting with those of bondholders, is no cause for striking out the charges as impertinent, irrelevant or scandalous.

It seems, however, that there are two serious objections to the bill as stated. First, the charges against the trustee are pleaded by indirection in the seventeenth paragraph of the amended bill. If charges are to be made, the facts relied upon should be stated categorically.

In the second place, the prayer for relief is faulty in our opinion. A judgment for payment of these bonds by the debtor is clearly cognizable only at law and not in equity. Nor could we at this time and solely upon these facts, order a sale of the mortgaged premises by the present trustee. Plaintiffs have made no offer that would pay off the outstanding bonds.

If the trustee has not been true to its trust, we could remove it and another trustee would have to be appointed. That remedy is not asked and is too drastic to be included in the blanket clause "such other and further relief as the court may deem proper". If that is what plaintiffs seek, they should so state and we

could then decide whether the facts pleaded or additional facts that plaintiffs might hereafter plead would entitle them to that relief. We can compel a trustee to exercise honest discretion; we can penalize a trustee which does not exercise honest discretion; we cannot compel it to adopt the court's discretion.

And now, October 15, 1951, defendants' preliminary objections 1, 2, 3 and 5 are dismissed and objections 4 and 6 are sustained to the extent stated in the foregoing opinion, and it is ordered that plaintiffs further amend their bill if they see fit to do so, within 20 days from the service of this order upon their respective counsel, in accordance with this opinion or suffer dismissal thereof.